THE PEOPLE' OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR BILLY CLAY, Defendant-Appellant.

(No. 59153; )

First District (3rd Division)—December 4, 1975.

Leo E. Holt and Diane M. Kinnard, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Michael J. Angarola, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Arthur Billy Clay, was charged with rape, armed robbery, and two counts of aggravated battery. After a bench trial in the circuit court of Cook County, he was found guilty of the four crimes. He was sentenced to terms of 6 to 18 years for rape; 6 to 18 years for armed robbery; and 1 to 5 years for each count of aggravated battery. All the sentences were to run concurrently. Defendant's sole contention is that the State failed to prove him guilty of the crimes beyond a reasonable doubt.

Joseph and Veronica Chavez, husband and wife, testified that on May 27, 1972, at about 4 a.m., they were in a restaurant. While there,

they met Matthew Williams, a man named Hayes, and David Clay, Jr. (defendant's brother). The five left the restaurant and drove to the Chavez' basement apartment at 913 North Racine Street in Chicago. Shortly thereafter, Williams left the apartment. He returned a few minutes later with a group of men, including defendant. These men pushed their way into the apartment.

Chavez testified that defendant and Hayes brandished knives and placed them next to his waist. They demanded money, and the two took approximately $15 from his left front pocket. After taking the money, defendant and Hayes commenced striking Chavez in the face and head with their fists. Eventually, Chavez was beaten to the floor and kicked continually. A couch was thrown over him. From time to time the couch was removed and defendant struck Chavez with a pipe. Chavez covered his face and head with his hands, and stated that he was struck 15 or 20 times. Chavez sustained a broken finger and broken knuckles on both of his hands. While Chavez was being struck by defendant, Hayes suggested that he be killed. Defendant's brother stopped the beating. Chavez was compelled to remain under the couch, but was able to see the defendant, Hayes and a third man, pulling off his wife's clothing.

Veronica Chavez testified that she saw her husband being beaten by the defendant and others first with fists and then with a metal leg from a table or chair.

Defendant then approached Veronica and demanded money from her. When she said she had none, defendant struck her in the face. Defendant ripped the buttons off her blouse and, with Hayes, took her to the bathroom. There, defendant struck Veronica in the face again, and the men took off her clothes. They then took her to the bedroom, and defendant and Hayes pushed her onto the bed. While her left leg was held by Hayes and her right leg held by another man, defendant raped her. When Veronica struggled, Hayes struck her on the head with a pipe. After defendant had finished, three other men raped Veronica.

After threatening Veronica not to tell the police, defendant and the others left at approximately 7:30 a.m. Both victims were taken to Cook County Hospital.

Later on the same date, defendant's father, David Clay, Sr., along with Lee Carter, the owner of the building in which the victims lived, visited Chavez at the hospital.

On June 9, 1972, at about 10 p.m., Joseph and Veronica Chavez, along with defendant's father, went to the home of the attorney who represented defendant at trial. Defendant had not been arrested at the time. Defense counsel asked Chavez questions and reduced his answers to writing. The notes stated that defendant was not at the apartment at the time of the commission of the crimes. The notes failed to

state that defendant robbed and beat him, that defendant raped and beat his wife, and that defendant's brother had committed oral intercourse with his wife. Chavez said that he had told defense counsel about these acts, but that counsel had not written them down. Chavez signed all three pages, but stated that he had not read them. Veronica Chavez testified that she had not heard her husband tell counsel that defendant had robbed and beat him, nor that defendant had raped her.

Chavez stated that he went to the attorney's home at the urging of defendant's father, an owner of a nearby tavern. The father told Chavez that he had two sons in the penitentiary, and that if another son went away, it would kill his wife. Chavez also testified that he was grateful to defendant's brother for saving his life by ordering the beating to stop.

Veronica Chavez testified that she did not understand the purpose of the visit to the attorney's home until after they had arrived there. She was opposed to her husband answering the questions. She asked her husband not to sign the statement, and she refused the urgings of defendant's father that she also sign it.

Defendant's sole contention is that the State failed to prove him guilty of the crimes beyond a reasonable doubt. His basic argument is that Chavez' act of voluntarily signing a statement which benefited the perpetrator of the offenses in question was so improbable and contrary to human experience that it created a reasonable doubt of defendant's guilt.

■ ■ Whatever the motives of Chavez in giving such a statement to counsel, it was certainly unusual and it also adversely affected his credibility. However, the giving of that statement by Chavez was not sufficient of itself to create a reasonable doubt of defendant's guilt as a matter of law. The issue remained a question of credibility of the witnesses, and had to be determined by the trier of fact who heard the evidence presented and observed the demeanor of the witnesses. (*People v. Mills* (1968), 40 Ill.2d 4, 237 N.E.2d 697.) Moreover, the testimony of Veronica Chavez was not similarly impeached, and her clear and detailed testimony alone would be sufficient to prove defendant guilty of the four crimes beyond a reasonable doubt. (*People v. Gray* (1965), 33 Ill.2d 349, 211 N.E.2d 369.) Her identification of defendant, whom she observed for several hours at close range in her apartment, was positive and sufficient to support the convictions.

For the reasons stated, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.